UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **MILES IVERSON**, **TRENTON EMBRY** **and BEN KAPLAN** individually and on behalf of all others similarly situated, <br><br>　　　　　　　　*Plaintiffs,* <br><br>　　　　v. <br><br> **MILWAUKEE ELECTRIC CORPORATION**, <br><br>　　　　　　　　*Defendant.* | Case No.: <br><br> **CLASS ACTION** <br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs, Miles Iverson, Trenton Embry, and Ben Kaplan ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), by and through their attorneys, allege the following causes of action, upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on personal knowledge upon the Defendant, Milwaukee Electric Corporation ("Milwaukee" or the "Defendant"):

### NATURE OF THE ACTION

1. This is a consumer class action arising out of Defendant Milwaukee's manufacture and sale of "about 90,860" units of the M18 Fuel 14" and 12" Top Handle Chainsaws (the "Products") that were made subject to an October 30, 2025.[1]

2. The Recall involves the M18 Top Handle Chainsaw, catalog number 2826-20 with a serial break identified with "A" in the products serial number.

---

[1] https://www.cpsc.gov/Recalls/2026/Milwaukee-Tool-Recalls-M18-FUEL-14-and-12-Top-Handle-Chainsaws-Due-to-Laceration-Hazard

3. The chainsaw's chain brake may not activate while in use, posing a laceration hazard (the "Defect"). There have been two reports of the chain brake not activating, including one injury involving a lacerated finger.[2]

4. The Products could be purchased at Home Depot and other home improvement stores and online at homedepot.com, and other distribution partners from March 2023 through September 2024 for about $350 (tool only) or $790 with batteries and charger.

5. The Products were advertised, sold, and installed across the United States without adequate warnings or safeguards related to the Defect. Defendant provided no warning of the Defect, and Plaintiff would not have purchased said item if they had known of the Defect.

6. Other manufacturers formulate, produce, and sell non-defective chainsaws with production methods that do not cause the chain break to not activate while in use.

7. Feasible alternative formulations, designs, and materials are currently available and were available to Defendant at the time the Products were formulated, designed, and manufactured.

8. All consumers who purchased the worthless and dangerous Products have suffered losses.

9. Defendant's failure to disclose the Defect at the time of sale – and its refusal to assume responsibility for the resulting effects- constitutes consumer deception, unjust enrichment, breach of contract, and breach of warranties. Plaintiffs and the Class would not have purchased the Products, or would have paid significantly less, had they known of the Defect and limited recourse available.

10. As a result of the above losses, Plaintiffs seek damages and equitable remedies on behalf of themselves and the Class.

---

[2] *Id.*

# FACTUAL BACKGROUND

11. On October 30, 2025, the CPSC Recall Notice 26-064 advising the Recall of M18 FUEL 14" and 12" Top Handle Chainsaws suffering from a design defect in which its chain brake may not activate during use, posing a laceration hazard.[3]

12. The recalled chainsaw involves the M18 Top Handle Chainsaw, catalog number 2826-20 with a serial break identified with "A" in the products serial number.

13. The Product was sold at Home Depot and other home improvement stores and online at homedepot.com, and other distribution partners from March 2023 through September 2024.

14. The CPSC Recall Notice reports two reports of the chain brake not activating, including one injury involving a lacerated finger.

15. The Products sold for between $350- $790.

16. Despite the Recall, the Defendants are not offering a refund. Instead, they are offering a free repair. This remedy is inadequate. First, the remedy requires the consumer to take time and effort to register the Product with the Defendant. Second, the remedy requires Plaintiff properly pack and mail the Product and send to Defendant for repair. Third, the remedy deprives the Plaintiff of the use of the chainsaw. Fourth, there are no assurances that the remedy will be adequate. This effort was not part of the original bargain entered into between Plaintiff and Defendant when he purchased the Product. A refund is the only adequate remedy.

17. Defendant is a large and sophisticated corporation that has been in the business of producing, manufacturing, selling, and distributing consumer products for many years, including producing and manufacturing the recalled Products.

---

[3] https://www.cpsc.gov/Recalls/2026/Milwaukee-Tool-Recalls-M18-FUEL-14-and-12-Top-Handle-Chainsaws-Due-to-Laceration-Hazard

18. Defendant is in the unique and superior position of knowing how its products are manufactured and the steps needed to produce safe products.

19. Accordingly, Defendant possesses superior knowledge regarding the risks involved in the production and manufacturing, and eventual end-use, of its Products. The only possible way for Plaintiff and the Class Members to discover the Defect would be to conduct their own testing of the Products prior to purchase. No reasonable consumer would undertake such a testing prior to purchase, nor would any reasonable vendor allow such testing.

20. Defendant has a duty to provide consumers, like Plaintiffs and the Class, with accurate information about its Products.

21. Thus, Defendant's deceptive omissions regarding the Products' Defect are likely to deceive and mislead consumers and the public, as such omissions have already deceived and misled Plaintiff and the Class.

22. Defendant's deceptive omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

23. Plaintiffs and the Class reasonably relied to their detriment on Defendant's misleading omissions.

24. In making the false, misleading, and deceptive omissions described herein, Defendant knew and intended that consumers would pay a premium for the Products marketed without the likelihood that the Product's safety mechanism, the chain break, would not activate when in use, over comparable products not so marketed.

25. As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representation and omission, Defendant injured Plaintiffs and the Class in that they:

    a. Paid a sum of money for Products that were not what Defendant represented;

    b. Paid a premium price for Products that were not what Defendant represented;

    c. Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendant warranted;

    d. Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendant represented;

    e. Were denied the benefit of the properties of the Products Defendant promised.

26. Had Defendant not made the false, misleading, and deceptive omissions, Plaintiff and the Class would not have been willing to pay the same amount for the Products they purchased and, consequently, Plaintiff and the Class would not have been willing to purchase the Products.

## JURISDICTION AND VENUE

27. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332, because (1) this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class, including Plaintiff, who are citizens of states different from Defendant, and (4) there are more than 100 putative Class Members.

28. This Court has personal jurisdiction over Defendant as it has its principal place of business within Wisconsin and within the jurisdiction of this District and Court. Defendant has also purposefully availed itself to the laws, rights, and benefits of this District.

29. Venue is proper under 28 U.S.C. 1391(b) because Defendant maintains a principal

place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

## PARTIES

30. Plaintiff Miles Iverson is a resident of Milwaukee, Wisconsin. Milwaukee is located in Milwaukee County, Wisconsin. Plaintiff Iverson purchased the Product, category number 2826-20 and serial number M39AD231002282. He has experienced the chain brake not activating while using the chainsaw.

31. Plaintiff Trenton Embry is a resident of Clarksville, Tennessee. Clarksville is located in Montgomery County, Tennessee. Plaintiff Embry purchased the Product on December 30, 2024, from Home Depot, category number 2826-20 and serial number M39AD241605163. He has experienced the chain brake not activating while using the chainsaw.

32. Plaintiff Ben Kaplan is a resident of South Port, North Carolina. South Port is located in Brunswick County, North Carolina. Plaintiff Kaplan purchased the Product, category number 2826-20 and serial number M39AD241001602.

33. Defendant is a Wisconsin corporation with its principal place of business located in Brookfield, Wisconsin. Defendant's registered agent for service of process is Corporation Service Company, 33 East Main Street, Suite 610, Madison, Wisconsin 53703.

34. Defendant specializes in the production of various electrical and home improvement tools and products.

## CLASS ALLEGATIONS

35. Plaintiffs bring this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

36. The Class that Plaintiffs seeks to represent is defined as follows:

**Nationwide Class**: "All consumers who purchased M18 FUEL 14" and 12" Top Handle Chainsaws catalog number 2826-20 with a serial break identified with "A" in the product's serial number.

37. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

38. Plaintiffs reserve the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

39. Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class who are Class Members as described above who have been damaged by Defendant's deceptive and misleading practices. It is estimated that around 90,000 units were recalled.

40. Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a. Whether Defendant was responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b. Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

  c. Whether Defendant made false and/or misleading statements and omissions to the Class and the public concerning the contents of its Products;

  d. Whether Defendant's false and misleading statements and omissions concerning its Products were likely to deceive the public; and

  e. Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Member

41. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

42. <u>Adequacy</u>: Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the Class Members they seek to represent, their consumer fraud claims are common to all members of the Class, they have a strong interest in vindicating their rights, they have retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

43. <u>Predominance</u>: Pursuant to Rule 23(b)(3), common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issues because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

44. <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

  a. The joinder of thousands of individual Class Members is impracticable,

cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude their maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false advertising to purchase its Products.

45. Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## CAUSES OF ACTION

### COUNT I: BREACH OF CONTRACT

46. Plaintiffs incorporate all previous Paragraphs as if fully set forth herein.

47. Defendant created a contract with the Plaintiffs through marketing, advertisements, and other promises.

48. Such contract included that Plaintiffs would receive the Products without any defects.

49. Plaintiffs performed the obligations under the contract as they paid the purchase price of the Products.

50. Defendant failed to perform their obligation under the contract in that such Products were not free from any defects

51. Plaintiffs and the Class have been damaged as a direct and proximate result of the Defendant's breach of contract.

52. Plaintiffs and the Class seek actual damages, attorneys' fees, costs, and other just and proper relief available under the law.

### COUNT II: BREACH OF EXPRESS WARRANTY
### WIS. STAT. §402.313

53. Plaintiffs incorporate all previous Paragraphs as if fully set forth herein.

54. Defendant, through its advertising and marketing expressly warranted that the Products were safe to use and free from defects.

55. Defendant breached this express warranty by providing Products that contained a

defect.

56. Plaintiffs and the Class read and relied on these express warranties provided by the Defendant in the description, labeling, marketing, and advertising for the Products.

57. Defendant was given notice of this breach through multiple complaints of the defect related to the Product.

58. As a result of the breach, Plaintiffs and the Class have suffered damages.

## COUNT III: BREACH OF IMPLIED WARRANTY
## WIS. STAT. §402.313

59. Plaintiffs incorporate all previous Paragraphs as if fully set forth herein.

60. Defendant is and was at all relevant times a merchant involved in the manufacturing, distributing, warranting, and/or selling of the Product.

61. The Product was and is, at all relevant times, a "good" within the relevant laws.

62. Defendant knew or had reason to know of the specific use for which the Product, as goods, was purchased.

63. Defendant entered into agreements with retailers, suppliers, and/or contractors to sell its Product to be used by Plaintiffs and the proposed Class Members.

64. Defendant provided Plaintiffs and the proposed Class Members with implied warranties that the Product was merchantable and fit for the ordinary purposes for which the Product was used and sold and was not otherwise injurious to consumers, that the Product would pass without objection in the trade, be of fair and average quality, and conform to the promises and affirmations of fact made by Defendant in its misrepresentations and omissions regarding safety. This implied warranty of merchantability is part of the basis for the benefit of the bargain between Defendant and Plaintiffs and Class Members.

65. Defendant breached the implied warranty of merchantability because the Product is not fit for its ordinary purpose of being a reasonably safe place for people to safety use as intended. The Product contains a safety defect, rendering the Product unsafe to use as intended. Therefore, the Product is not fit for its particular purpose.

66. As instructed by the Recall, Plaintiffs are forced to discontinue use of the Product due to the ongoing safety risk.

67. The aforementioned problems associated with the Product constitute safety risks, such that the Product is neither safe nor suitable for Plaintiffs and the Class Members to use as intended. Therefore, there is a breach of the implied warranty of merchantability.

68. Moreover, due to the inadequate nature of the Recall, it is not required and would be futile for Plaintiffs to provide Defendant further opportunity to cure their breach.

69. Plaintiffs and Class Members have had sufficient direct dealings with either Defendant or one of their authorized retailers, representatives, and agents to establish a contract between Defendant, on the one hand, and Plaintiffs and each Class Member, on the other hand.

70. Nevertheless, privity is not required because Plaintiffs and each Class Member are the intended beneficiaries of Defendant's warranties and its sale through retailers. The retailers were not intended to be the ultimate consumers of the Product and have no rights under the warranties provided by Defendant. Defendant's warranties were designed for and intended to benefit the consumer only, and Plaintiffs and Class Members were the intended beneficiaries of the Product. Thus, it was reasonably foreseeable that Plaintiffs and Class Members would be the intended beneficiaries of the Product and its warranties.

71. Defendant impliedly warranted that the Product was durable, safe, suitable for consumers to use, of merchantable quality, and fit for their intended purpose. These implied

warranties included, among other things: (i) a warranty that the Product manufactured, supplied, distributed, and/or sold by Defendant was safe and suitable to use; (ii) a warranty that the Product would be fit for its intended use while the Product is being used; and (iii) a warranty that the Product would conform to all of the promises and affirmations of fact on the Product's label and online advertising.

72. Instead, the Product contains a defective design and/or manufacture, as alleged herein. As a result of the Defect, the Product fails to conform to the promises or affirmations of fact on its label and online advertising.

73. Defendant failed to adequately warn Plaintiffs and Class Members that the Product contained the Defect, was not safe or suitable for use, and could cause serious injuries.

74. Defendant breached the implied warranties because the Product was and is sold with the Defect.

75. Defendant's attempt to limit or disclaim any implied warranties is unconscionable and therefore unenforceable.

76. Plaintiffs and Class Members had no meaningful choice in determining the terms of that unreasonably favored Defendant, who had superior and exclusive knowledge of the Defect, which existed at the time of sale of the Product. A gross disparity in bargaining power existed between Defendant and Plaintiffs and the Class Members, and Defendant knew or should have known that the Product was defective at the time of sale.

77. Contrary to the applicable implied warranties, the Product, at the time of sale and thereafter, was not fit for its ordinary and intended purpose. Instead, the Product suffered, and continues to suffer, from the Defect as alleged herein.

78. Defendant's failure to adequately repair or replace the dangerous Product caused the warranty to fail in its essential purpose.

79. As a direct and proximate result of the foregoing, Plaintiffs and the Class Members suffered, and continue to suffer, financial damage and injury, and are entitled to all damages, in addition to costs, interest and fees, including attorneys' fees, as allowed by law.

## COUNT IV: UNJUST ENRICHMENT

80. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

81. Plaintiffs bring this count on behalf of themselves and the National Class.

48. Plaintiffs and the Class Members conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Product.

82. Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiffs and the Class Members.

83. Because this benefit was obtained unlawfully—namely, by selling and accepting compensation for the recalled Products without providing safe components in the Products it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

84. The circumstances, as described further herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiffs and the Class Members.

85. Defendant manufactured, marketed, and sold the recalled Product under the guise of these chainsaws being safe and operable. Instead, Defendant sold the chainsaws with defective components that present serious safety risks. And rather than refunding or reimbursing Plaintiffs and Class Members the difference in resale value, Defendant has offered to simply repair the defective Product without guaranteeing the repair is not defective as well.

86. Because it would be unjust and inequitable for Defendant to retain the non-gratuitous benefits conferred on it by Plaintiffs and members of the Classes, Defendant must pay

restitution to Plaintiffs and members of the Classes for its unjust enrichment, as ordered by the Court.

## JURY DEMAND

87. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff and Class Members demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class Members, prays for judgment as follows:

A. For an order certifying the Class and naming Plaintiffs as the representative for the Class Members and Plaintiff's attorneys as Class Counsel;

B. For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C. For an order finding in favor of Plaintiffs and the Class Members on all counts asserted herein;

D. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For an order awarding Plaintiffs and the Class Members their reasonable attorneys' fees and expenses and costs of suit; and

I. For an order providing for all other such equitable relief as may be just and proper.

Dated: November 13, 2025.    Respectfully Submitted,

/s/ *Paul J. Doolittle*
Paul J. Doolittle
**POULIN | WILLEY | ANASTOPOULO**
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: Paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorney for Plaintiffs & Proposed Class*